UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


SHARON QUICK,                              )
                                           )
            Plaintiff,                     )
                                           )        CIVIL ACTION NO.
VS.                                        )
                                           )        3:10-CV-1531-G
VISTACARE, INC.,                           )
                                           )
            Defendant.                     )


<u>MEMORANDUM OPINION AND ORDER</u>


On or about August 18, 2003, the defendant VistaCare, Inc. ("VistaCare")

hired the plaintiff Sharon Quick ("Quick") as a registered nurse case manager.

Plaintiff's Original Petition and Request for Disclosure ("Petition") ¶ 6, *attached to*

Defendant VistaCare, Inc.'s Notice of Removal (docket entry 1) as Exhibit A (docket

entry 1-2).  At the time VistaCare hired Quick, Quick disclosed that she suffered

from insomnia, a "disability" for which she was under medical care and thus required

"certain reasonable accommodations."  *Id*.  Consequently, VistaCare set Quick's

workday to begin at 12:00 noon and to end at 8:00 p.m.  *Id*.  VistaCare, however,

contends that Quick's workday was scheduled from 12:00 p.m. until 8:00 p.m.

because she requested these hours as a "night person" and did not disclose a disability

to case manager Marlene Casco, who hired Quick.  Defendant's Brief in Support of

its Motion for Summary Judgment ("Motion") at 3 (docket entry 19).  As a case

manager, Quick attended, either by speaker phone or in person, "sporadic" Monday

meetings that began at 8:00 a.m. or 8:30 a.m.  *Id.*

       In December of 2004, VistaCare hired Elise Powers ("Powers") as a director.

Petition ¶ 7.  According to Quick, Powers "repeatedly harassed" Quick about her

work hours.  *Id.*  In August of 2006, at the insistence of Powers, Quick provided

VistaCare with documentation that Quick was unable to work from midnight to

10:00 a.m.  *Id.* ¶ 8.  In her review that same month, Quick's work hours changed

from 11:00 a.m. to 8:00 p.m., and she received a merit raise.  *Id.*

       In August of 2006, as a result of a state Medicare audit, Powers implemented

Monday 8:30 a.m. meetings, meetings which had previously been held sporadically.

Motion at 4. Powers instructed Quick to attend these meetings.  *Id.*  Quick then

submitted a note from Dr. Gustavo Day which indicated that she could not work

from midnight until 10:00 a.m.  *Id.*  Dr. Day did not diagnose Quick with insomnia.

*Id.* at 5.

       In August of 2007, Quick took a leave of absence from VistaCare under the

Family and Medical Leave Act ("FMLA") in order to have shoulder surgery.  Petition

¶ 9; Motion at 6.  At that time, Quick avers, "[d]uring her 4 years as a Registered

- 2 -

Nurse Case Manager, [she] received regular positive evaluations and merit raises."
Petition ¶ 9.  Though she exhausted her FMLA leave, VistaCare extended Quick's
leave period.  Motion at 6.

In January of 2008, Quick returned from her leave of absence, and VistaCare
offered her a position as director of public relations.[1]  Petition ¶ 10.  Quick declined
the offer as it required her to attend early morning meetings.  *Id*.  Instead, Quick
accepted a position as hospital liaison and transitioned into the director of public
relations position after a couple of months.  *Id*.  Quick accepted the director of public
relations position only because VistaCare agreed that the only morning meeting
which required her attendance was the Monday marketing meeting at 10:00 a.m.  *Id*.

In January of 2008, Powers first became primarily responsible for Quick's work
schedule.  *Id*. ¶ 11.  Powers purportedly ridiculed and criticized Quick in front of
other VistaCare employees for Quick's inability to arrive at work by 8:30 a.m.  *Id*.  In
August of 2008, Quick's supervisor gave her a merit raise, but the harassment
continued.  *Id*. ¶ 12.

In April of 2008, Power received a complaint from the Medical City Hospital
Director of Social Work that Quick had committed serious HIPAA[2] violations at the
hospital and was no longer welcome there.  Motion at 6.

---

[1]      VistaCare contends the position was in fact director of professional
relations.  Motion at 6.

[2]      The Health Insurance Portability and Accountability Act of 1996.

- 3 -

On November 17, 2008, Powers allegedly told Quick that if Quick could not arrive at work by 8:30 a.m., then Quick no longer had a job at VistaCare.  Petition ¶ 13.  Quick claims that Powers "acting as an agent of VistaCare, terminated [Quick] by ceasing to provide [Quick] with the reasonable accommodations that she required to perform her job" and thus discriminated against Quick based on her disability.  *Id*. VistaCare contends that Quick resigned.  Motion at 8-9.

On July 24, 2009, Quick jointly filed a charge of discrimination ("charge") with the Texas Workforce Commission and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination due to denial of a reasonable accommodation to adjust her work hours on November 15, 2008, and her discharge on November 17, 2008.  *Id*. at 9; *see also* Appendix to Defendant's Brief in Support of its Motion for Summary Judgment ("App.") at App. 157.  Quick including a statement that "I believe I have been discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990."  There is no mention of any other grounds for relief.  In support of her charge, Quick included a note from a new doctor, which Quick admits was submitted after she left VistaCare.  Motion at 9. On June 3, 2010, the EEOC issued a dismissal and notice of right to sue.  *Id*. at 10.

On July 6, 2010, Quick filed a case in the 298th Judicial District Court of Dallas County, Texas.  On August 6, 2010, VistaCare timely removed the case to this court.  Under a theory of *respondeat superior*, Quick contends that VistaCare

- 4 -

(1) violated the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12101, *et seq.*, and the Texas Commission on Human Rights Act, TEX. LAB. CODE ANN. § 21.001, *et seq.* (Vernon 1996) ("TCHRA"), by discharging her because of her disability and failing to make reasonable accommodation to her disability, (2) violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, by creating and allowing a hostile work environment, and (3) intentionally inflicted emotional distress on her. *See* Petition at 4-6.

VistaCare moves for summary judgment on all of Quick's claims. Quick has failed to respond to VistaCare's arguments regarding her hostile work environment claim under Title VII and her intentional infliction of emotional distress claim, as well as VistaCare's arugment that Quick failed to exhaust her TCHRA disability claim. Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Reply") at 1 (docket entry 29). Quick only responded to VistaCare's motion for summary judgment on her ADA claim. *See generally* Plaintiff's Brief in Support of Her Response to Defendant's Motion for Summary Judgment (docket entry 27).

## II.  ANALYSIS

### A.  The Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); see also *Celotex*

*Corporation v. Catrett*, 477 U.S. 317 (1986).  The disposition of a case through

summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy,

and inexpensive determination of actions, and, when appropriate, affords a merciful

end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn*

*Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).  While all of the evidence must be

viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59

(1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the

nonmovant's summary judgment burden.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288

F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc)).  A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson*, 477 U.S. at 248.

The movant makes the necessary showing by informing the court of the basis

of its motion and by identifying the portions of the record which reveal there are no

genuine material fact issues.  *Celotex*, 477 U.S. at 323.  The pleadings, depositions,

admissions, and affidavits, if any, must demonstrate that no genuine issue of material

fact exists.  FED. R. CIV. P. 56(c).

If the movant makes the required showing, the nonmovant must then direct

the court's attention to evidence in the record sufficient to establish that there is a

genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this

burden, the "opponent must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v.*

*Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must

show that the evidence is sufficient to support a resolution of the factual issue in her

favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court

is not permitted to make credibility determinations regarding the evidence. See

*Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993). The nonmovant

cannot survive a motion for summary judgment, however, by merely resting on the

allegations in her pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities,*

*Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*,

477 U.S. at 324.

## B.  The Charge

A condition precedent for bringing suit on an employment discrimination

claim under Title VII is the timely filing and exhaustion of an EEOC charge. *See* 42

U.S.C. § 2000e-5(e)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir.

2002), *cert. denied*, 537 U.S. 1200 (2003). "The scope of a Title VII complaint is

limited to the scope of the EEOC investigation which can reasonably be expected to

grow out of the charge of discrimination." *Thomas v. Texas Department of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (citing *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990)).

When Quick filed her charge with the EEOC, she did not include any allegations under Title VII, including a hostile work environment. Quick complained only that VistaCare violated the ADA. *See* App. 157 ("I believe I have been discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990."). Thus, Quick has failed to exhaust her administrative remedies, and her Title VII claims must be dismissed. Furthermore, Quick only responded to VistaCare's motion for summary judgment as to her ADA claim, and she did not respond to VistaCare movement for summary judgment on her hostile work environment claim.[3]

VistaCare argues that Quick's TCHRA claim is time-barred because the corresponding charge of discrimination was not timely filed. Motion at 11. Under the TCHRA, a plaintiff is required to file her charge within 180 days of the date of the alleged discrimination, and under Title VII, the deadline is 300 days. *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997), *cert. denied*, 525 U.S. 1067 (1999);

---

[3]   Quick also failed to respond to VistaCare's motion for summary judgment as to her intentional infliction of emotional distress claim, as well as VistaCare's argument that Quick failed to exhaust her TCHRA disability claim.

*Mennor v. Fort Hood National Bank*, 829 F.2d 553, 555 n.8 (5th Cir. 1987).  Quick

claims that she was discriminated against on November 15, 2008, but she filed her

charge on July 24, 2009, 251 days later.  Motion at 11.  Quick does not dispute this

fact.  *See* Rule 56(e), F.R. CIV. P.  Thus, her TCHRA claim is time barred.

## C.  ADA Claim

The ADA prohibits discrimination in employment against qualified persons

with a disability.[4]  *Dupre v. Charter Behavioral Health Systems of Lafayette Inc.*, 242 F.3d

610, 613 (5th Cir. 2001); *see also* 42 U.S.C. § 12112(a).  To establish a *prima facie*

case under the ADA, Quick must prove (1) that she has a disability within the

meaning of the ADA; (2) that she was qualified for her job; and, (3) that an adverse

employment decision was made solely because of her disability.  *Zenor v. El Paso*

*Healthcare System, Limited*, 176 F.3d 847, 852-53 (5th Cir. 1999); *Hamilton v.*

*Southwestern Bell Telephone Company*, 136 F.3d 1047, 1050 (5th Cir. 1998); *Turco v.*

*Hoechst Celanese Corporation*, 101 F.3d 1090, 1092 (5th Cir. 1996).  Such proof may

be established either by direct evidence or by indirect evidence using the burden-

shifting regimen established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792

(1973).  The ADA defines the term "disability" as:  "(A) a physical or mental

---

[4]     The current version of the ADA incorporates the ADA Amendments Act
of 2008 ("ADAAA"), PUB.L. NO. 110-325, 122 STAT. 3553 (2008).  The ADAAA,
however, only applies to claims arising on or after January 1, 2009, and thus does not
apply to Quick's claims.  See *Amsel v. Texas Water Development Board*, 2012 WL
913676, *3 n.2 (5th Cir. March 19, 2012).

impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  Quick must also establish that the impairment, if it existed as perceived, would be substantially limiting.  *McInnis v. Alamo Community College District*, 207 F.3d 276, 281 (5th Cir. 2000); see also *Deas v. River West, L.P.*, 152 F.3d 471, 475-76 (5th Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999) and *cert. denied*, 527 U.S. 1044 (1999).

To establish a violation of the ADA, Quick must show "that (1) she has a disability; (2) she was qualified for the job; and (3) an adverse employment decision was made solely because of her disability."  *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 763 (5th Cir. 1996); see also *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999).  Due to the absence of direct evidence of discrimination in this case,[5] Quick must use the three-step, "indirect" or "pretext" method of proof detailed in *McDonnell Douglas*; see also *Daigle v. Liberty Life Insurance Company*, 70 F.3d 394, 396 (5th Cir. 1995); *Rizzo*, 84 F.3d at 762.  In the first step, Quick must establish a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  If she produces proof of the elements of a *prima facie* case, a presumption of discrimination arises.  See *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th

---

[5]        Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.  See *Mooney v. Aramco Services Company*, 54 F.3d 1207, 1217 (5th Cir. 1995); *Brown v. East Mississippi Electric Power Association*, 989 F.2d 858, 861 (5th Cir. 1993).

Cir. 1993). At the second step, VistaCare can rebut this presumption of discrimination by offering a legitimate, nondiscriminatory reason for its actions. See *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If VistaCare satisfies this burden of production, the *prima facie* case dissolves, and the case proceeds to the third step of the analysis. See *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993). At this third stage, the burden is on Quick to prove that the reasons offered by VistaCare are pretexts for prohibited discrimination. See *id*. at 507-08.

VistaCare argues that insomnia is not a recognizable impairment. Motion at 12. For the purpose of deciding its motion, however, the court will assume *arguendo* that, at all relevant times, Quick suffered from a "disability" within the ADA's definition of that term. To meet her initial burden under *McDonnell Douglas*, however, Quick must still provide competent evidence that she was qualified for her position, and that VistaCare discharged her because of her disability.

To determine whether a plaintiff is otherwise qualified for a given job, the court must conduct a two-part inquiry. First, it must determine whether the plaintiff could perform the essential functions of the job, *i.e.*, functions that bear more than a marginal relationship to the job at issue. Second, if the court finds that the plaintiff is not able to perform the essential functions of the job, it must determine whether any reasonable accommodation by the employer would enable her to perform those

functions.  See *Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993) (citing *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir. 1991)), *cert. denied*, 511 U.S. 1011 (1994); see also *Jenkins v. Cleco Power LLC*, No. 05-30744, 487 F.3d 309, 315 (5th Cir. 2007).  VistaCare maintains that Quick could not perform an essential function of her job -- attending Monday morning meetings.  Reply at 4. From the undisputed facts in the record, the court concludes that Quick could not perform the essential functions of her job, and that VistaCare reasonably accommodated Quick's condition.  See *Cortez v. Raytheon Co.*, 663 F. Supp.2d 514, 522 (N.D. Tex. 2009).

Though Quick and VistaCare differ on whether Quick's employment was terminated or whether she resigned, Quick has adduced no facts suggesting that a discriminatory reason likely motivated a decision to terminate her employment or that VistaCare's explanation was not credible, *i.e.*, was probably pretextual.  See *Hicks*, 509 U.S. at 515-18; *Burdine*, 450 U.S. at 256.  Quick's subjective belief that she was a victim of discrimination is insufficient, without further evidentiary support, to overcome VistaCare's articulation of a legitimate, non-discriminatory motive.  *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 567 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984).

D. <u>Pendent State Law Claim</u>

Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Yet supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726. Consequently, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon*, 484 U.S. at 350.

When the federal claims are dismissed before trial and only a state law claim remains, the balance of factors to be considered under the supplemental jurisdiction doctrine weigh heavily in favor of declining jurisdiction; therefore, the federal court should usually decline the exercise of jurisdiction over the remaining claims and remand the case to state court. *Id.* at n.7. According to the Fifth Circuit, "[o]ur general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d

580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir.

1989)).

In the case before the court, the federal claims against VistaCare have been

dismissed and only the state law claim of intentional infliction of emotional distress

remains.  Because the federal claims were dismissed before trial, the factors of judicial

economy, convenience, fairness, and comity suggest that this court ought to decline

jurisdiction over the remaining state law claim against VistaCare.  *See* 28 U.S.C.

§ 1367(c)(3).

### III.  CONCLUSION

For the reasons stated, VistaCare's motion for summary judgment is

**GRANTED**.  The remaining claim of intentional infliction of emotional distress

against VistaCare, which is governed exclusively by state law, is **REMANDED** to the

**298th District Court for Dallas County, Texas**, from which it was removed.  The

clerk shall mail a certified copy of this memorandum opinion and order to the

County Clerk of Dallas County, Texas. 28 U.S.C. ¶ 1447(c).

**SO ORDERED**

March 29, 2012.

_____

**A. JOE FISH**
**Senior United States District Judge**